Call our next case, 252179, United States v. Ruben Dario Guerrero Grimaldos, counsel. Mr. Shepherd, how are you, sir? I'm good. How are you all doing? It's all good. Are you ready? Mm-hmm. Okay, thank you. May it please the court, Tim Shepherd from the Office of the Federal Public Defender on behalf of the appellant, Ruben Guerrero Grimaldos. I'd like to reserve three minutes for rebuttal.  Thank you. Mr. Guerrero's 12-month sentence in this case for immigration fraud is the product of several sentencing errors. First, the district court denied acceptance of responsibility based on arrest conduct that occurred prior to notice of federal charges. Let me stop you there for a minute, because the record's not real clear here in terms of whether acceptance was given or not, or if it was taken and given back. So your understanding is that... Or given only vocally. Sorry? Or given only vocally. Oh, yeah, given acceptance of responsibility. Ultimately, the court denied acceptance of responsibility. He did grant it at one point, right? He denied it initially, granted it at the end, and then... And then took it away. Yes, I think the parties agree on that, that ultimately he denied. And he denied based on a single-sentence explanation that was Mr. Guerrero's arrest conduct. This court should join the three circuits to have already decided this question and recognize that acceptance of responsibility cannot be denied based on conduct that occurs prior to notice of federal charges. No court has held to the contrary. The First, Sixth, and Eleventh already recognize this rule, and I believe this court has signaled its agreement in cases like Atwood that are unpublished. The court should follow the reasoning from Jeter and Wade out of the Sixth and Eleventh circuits, where the court explained in Wade that what we're trying to assess for acceptance of responsibility is a person's reaction to federal charges. That simply is impossible if they're unaware of it. Let me just anticipate the government's argument here. So, okay, we'll concede the two points, not that they're going to concede the two points, but we'll assume they concede the two points. The judge can go straight to the 3553A factors and take all of this into consideration and pose the same sentence. The judge could do so. I don't believe the judge did do so, and I don't think we're left with a, quote, sure conviction that the district court would have done so, which is the standard for harmless error, if I understand the court correctly. You got it. We're looking at harmless error. As the court has explained repeatedly, harmless error for only found in extraordinarily rare circumstances, or exceptionally rare, I think is the phrase, and this is a heavy burden for the government to show a sure conviction the district court would have done the same. We have nothing like that here. The district court did not provide a clear statement, as this court has acknowledged in cases like Zabilski-Perez-Colón, which though not dispositive, without that type of clear statement, it is very difficult to show harmless error. The district court here- No, I just want to ask you a question that comes a little before that.  Would you say, are we bound by the Mercado statement that this guideline is ambiguous, and if so, does it get us to the commentary that talks about acceptance of responsibility considering other conduct? I think the court, I don't know that the court is bound by it necessarily, because it could be, you know, a different question as to the statement of the guideline. I think the parties both agree that the commentary should be looked at in this case. I don't think the plain language of the guideline says one way or another, though I do think the most natural reading of the guideline and the commentary is that there is a temporal limit, because again, there's such an emphasis on the guilty plea and the timely guilty plea, and were pre-arrest conduct like this to be considered, or pre-notice conduct to be considered, it could render that commentary a virtual nullity. As the Sixth Circuit explained in Jeter, it would strongly disincentivize people pleading guilty, which is, as this court understands, the central purpose of the acceptance guideline. Are you looking for a bright line rule as to pre-notice, pre-indictment, or would you be, will you probably be satisfied if we just were to say conduct at the arrest is not going to disqualify someone? I would be satisfied with that, Judge Rendell, but I am asking for a bright line rule. I Well, they're saying indictment, not just notice, notice, because you could get notice in other ways rather than indictment. Right, and I think that several of the courts do discuss notice at length. They use the phrase pre-indictment, and that's why we used it in our briefing. I think notice is a more apt way to look at this, because again, if we're ultimately trying to assess somebody's reaction to charges, it's somewhat irrelevant whether the charges have been filed or not as long as the person is on notice of those charges. So that could... This individual is not on notice, and as I understand your position, he didn't know these were Homeland Security or ICE officials that approached him, correct? That is our position. They did have identifying clothing on them, didn't they? They said they did. They were also in an unmarked car, though to be clear, I don't know that it matters. The district court found that he thought that this was evasive. I don't think that answers the question of notice. I think that might answer the question of whether or not his conduct was inconsistent with acceptance, separate and apart, but I certainly don't think that even if he were aware that they were ICE agents, that would put him specifically on notice of federal charges. ICE agents could be there for immigration purposes, which is again, I mean, why he partially explained that he was looking for his... Well, and it's acceptance of responsibility for the offense. So even if he knew they were ICE, he probably didn't know the offense was lying on his form. So you at least have to know what the offense was, it would seem. Exactly. And I do think, again, all of the cases, McLaughlin, Jeter, Wade, McCarthy, are focused on that notice that he has to have actual knowledge of the charges. So for example, in McCarthy, the person had already been federally charged, was arrested and was in pretrial detention, and the court there, the First Circuit there explained that his detainer surely put him on notice. But yes, I don't think that somebody could be on notice if they don't know what the charges are. Do we have the district court look at this again, or can we say as a matter of law, based on the record, he had accepted responsibility, if we, according to your view? First, I think the court could decide it as a matter of law. I think as a matter of law, there is nothing on the record to support a denial of acceptance other than this statement at the end that it was based on his arrest conduct. So I think as a matter of law, the court should do so. I think if the court were to remand, it would need to provide some clarity about this bright line rule that the court couldn't rely on pre-notice conduct. But even if the court doesn't accept the bright line rule, I think as a factual matter here, the district court clearly erred. Because again, it didn't address the timely guilty plea, other evidence that is significant of acceptance. It merely stated this one sentence. Also, there's a practical consideration here, too, as to when you start looking at the person's conduct and attitude, is really what it is. If someone assumed that the person was on notice, and their initial reaction is an offensive one, one of indignation, and they're thinking about it, whether they're detained, whether they're free on bail, and they start thinking about it, and they start getting pains of consciousness and saying, you know, I blew it. I'm not that kind of person. I wasn't brought up that way. This was not right. That could be a day after. It could be an hour after. It could be a year after. But it makes absolutely no sense to not credit the person's change of attitude, not credit the person's change of attitude. In terms of acceptance of responsibility, it doesn't make any sense to say, well, at this point, you've got to accept responsibility. And I'm guessing, for most folks, the more who are willing to accept responsibility, the more they think about it, the more they might feel some sense of guilt, or the more inclined they are to accept responsibility, not necessarily when they get the indictment handed to them by whoever or when they're arrested and put on handcuffs. It just doesn't make much sense. Well, certainly, I agree with the court that people might develop remorse over time. I certainly agree with that. So I'm not suggesting by any stretch that the indictment itself automatically, anything you do after that could preclude acceptance. But I do think that type of bright line rule avoids... There's a bare minimum, you're saying. Yeah, I think the alternative would be that any pre-arrest conduct, the conduct itself, the underlying offense conduct, could be a grounds for denying acceptance. And again, you'd have virtually no reason to have anybody ever accept responsibility and plead guilty, which I do think is why I do want to make sure I address Judge Schrepper's questions about harmlessness. I do think here that any error was not necessarily harmless. The government, I think, overstates its reliance on some of these cases that are not like the one here. Several are about plain error review, not harmless error. And the Perez-Colón case, for example, did not only involve the guidelines range being unmoved. There, the offense level itself was unmoved as well. And as this court explained in Langford, those are all benchmarks we need to consider. The fact that the guidelines range is unmoved doesn't answer the full question. I think the government also overstates its reliance on cases about variances because this court has never recognized that an upward variance necessarily renders a sentencing error harmless. And I think regardless, in this case, the lack of clarity on the record makes it impossible for the government to show a sure conviction of what would happen. If anything, I think the record and the confusion at the end of the sentencing suggests that the district court was uncommonly focused on the offense level rather than the guidelines range. What are you asking us to do? We are asking for a remand with instruction that the acceptance of responsibility guidelines should be applied. Well, you said he applied it. Well, but he eventually, I think the parties do agree that he eventually rescinded that and he determined that Mr. Guerrero was an offense level eight, which again, I think was important to its determination of how it could get to the ultimate offense level of 10 with the variance. I do want to make sure that I, sorry. One other, the disparity of this sentence as compared to other offenders, you raised that specifically. That was a very, a point that you raised and the court didn't discuss it. Isn't that a procedural, pretty clear procedural error under our case law that if you have, I mean, as I said, if a party raises a colorable argument about the applicability of one of the actors, district court may not ignore it. And it's a reversible procedural error. That's right. Certainly. I agree with Judge Rundell. The court did not address it other than by a rote statement with this court, which this court has said is not sufficient. I do want to address the government argues in this case that we should have showed a defendant exactly parallel to our own. I think that language is offered in error. It's from the Lacerda case, which was a colorable argument standard. And in fact, the government has availed itself of the same standard in cases like U.S. v. Merced, where I think indisputably they are offered far less significant disparity evidence than was offered here, which provided all of the available sentencing data, adjacent data from the commission. And I think that the average sentence is what, three months or less? Right. It's three months and a considerable number of people actually get time served or get no time. But yes, it's three months, which shows the disparity was even greater than the district court imagined, which I do think speaks to the prejudice. I think there is a reasonable probability that on remand, the district court would take that seriously. You know, the court said repeatedly, I'm not sentencing you for the state crime. I'm not sentencing you for the state crime. And then he sentenced him for the state crime. But then add supervised release provisions that pertain to the state crime. You know, reporting as a sex offender and not to be with minors. And I mean, what what do you make of that? I see that I'm out of time, but if I could just address. Yeah, I think I'd say you're on our time. OK, thank you. I do think that was a problem. I think the best that could be said for it is that there's a lack of clarity on the record, which is ultimately what we're looking for from district courts, because it did repeatedly bring up the state offense while then saying it wasn't considering that. I think it goes mostly to our first of our second issues, the procedural error issue, which is that if the district court was relying on those prior convictions, it should have explained why that merited an upward variance. And if it wasn't considering them, then we're left with basically no explanation for the upward variance, which, again, I think in addition to the sentencing disparity issue, you have a serious problem here with the lack of explanation for an upward variance. Well, he painted a picture of the defendant. You know, I don't see an individual on a beautiful mountaintop. He's a danger to our community. I don't know. I guess lack of clarity is is one way to put it. Again, I think that's the the fairest of the most generous way maybe to read it. Again, I do think the district court, I agree, Judge McKee, with your with your statement. I do think the district court was focused on that. But I think because the district court kept explaining that that wasn't its basis, it's certainly something that we need to remand over to figure out. But again, I think the acceptance issue is the easier way to remand here. If there are no further questions. Quick question as to your client's release date. We took this on an expedited basis. Do you have an idea as to what your client's, what he would max out on the sentence? So because it was 12 months, he's not eligible for. I understand that. But when did he go into federal custody? So he went into federal custody when he was arrested in April of 2025. His release date is currently the end of April of 2026. But October 28, if if he gave the acceptance responsibility and said six months or I mean, resentenced him lower, you know, we figured out that if he were to resent October 28 might be a date that he might get out. I agree. I think the timing is really important in this case. I think being real, we appreciate the expedited base of this, but being realistic, by the time this this case is resolved here, we likely will have gotten to around six months, which is the recommendation from the government. It is, you know, I think what would be the appropriate sentence on remand. So time is somewhat of the essence. Well, we could incur if we send it back. We encourage the district court to be mindful of that. I agree. I think that is a good idea. There are other questions. See you on rebuttal. Thank you. Good afternoon, Mr. Romano. May it please the court. John Romano for the United States. Let me start with the acceptance of responsibility issue. This court should certainly not adopt the bright line rule from the other three circuits. There is no basis in the guideline for it. There's no basis in the commentary for it. And there's no reason for it at all. If you look at the text of the guideline, it says clearly demonstrates acceptance of responsibility for his offense. Even the First Circuit, Judge Selye's opinion in McLaughlin said there's no temporal limit in the guideline. This court in Mercado said there's no reason to adopt a bright line rule like that. And I'll tell you why. The Sixth Circuit, which is the first circuit to have done this, adopted that bright line rule for a reason. And the reason was, let me find the quote here, they should not allow a denial, quote, solely because he committed the federal crimes after his arrest and indictment on state crimes. In that case, the sentencing court denied acceptance of responsibility because the defendant was arrested on a state crime, then committed the federal crime. And that court said, well, by committing the federal crime, you showed you didn't accept responsibility. Frankly, that makes no sense. And the Sixth Circuit easily could have said, that doesn't make any sense. The logical limit for 3E1.1 is it has to be evidence that sheds light on whether you accepted responsibility for the federal offense. Well, but why shouldn't we say that it can't be arrest conduct? Because arrest conduct, you don't know what the offense is. And if we have district courts that keep sentencing based entirely on the way you comported yourself during your arrest, we're gutting the acceptance of responsibility guideline. And we're not being faithful to the terms. Acceptance of responsibility for the offense. You have to know what the offense is. I completely disagree, Your Honor. The best evidence, Judge McKee mentioned this before, the best evidence of acceptance of responsibility. I can think of none better. I commit the offense. I go to bed that night. I feel sorry for it. I walk down to the police station and I confess. Under the defendant's reading, the district court can't even consider that because it's pre-notice. How about this? The flip side. No, you can consider it in granting. You can't consider it in denying. No, Your Honor. It goes both ways. Judge Selye said it too. The guideline goes both ways. There is absolutely no basis in this guideline for saying you can consider that for giving the acceptance of responsibility reduction, but not for denying it. Let's look at the flip side. I commit the offense. Instead of feeling bad and going in and confessing, I burn the evidence. I kill the witnesses. I lead the police on a high-speed chase. Apparently, the defendant says, can't consider that either in determining acceptance of responsibility. We know that's not true because 3C1.1 allows an obstruction enhancement for that conduct. And if you get an obstruction enhancement, you're probably not getting an acceptance enhancement. So I think the real rule here should be post-offense words and conduct. And that's what this Court said in both Cekirani and Mercado. Now, this Court wasn't deciding this particular issue, so don't get me wrong here, but here's what Cekirani said. How would you write the rule? How would I write the rule? Defendant's post-offense words and conduct. Any time after you've committed the burglary but the government has no idea what you're doing and you decide to leave town, denied acceptance of responsibility? No, Your Honor, because, again, this is a totality of the circumstances test. We allow district courts to consider literally everything. The court should be able to consider, okay, did you walk down to the station and confess? That's pretty good evidence. Did you kill a witness? Pretty good evidence you didn't accept responsibility. Did you plead guilty quickly? That's good evidence, too. It's all a balancing test. Note 5 of the guideline says we give substantial deference to a district court's fact-finding. We let the court consider the totality of the circumstances. Way back in the, is it the 80s or 90s, the McDowell case. Quote, assess the totality of the situation in determining whether defendant accepted responsibility. Further on, whether the defendant exhibited remorse, whether he evaded capture, and many other factors. This Court has already said you should be considering these things. Now, let's look at the commentary. What does the commentary say? The commentary specifically says, this is note 1B, voluntary termination or withdrawal from criminal conduct or associations. Certainly something that could happen pre-notice. How about note 1D? Voluntary surrender to authorities promptly after commission of the offense. Not after being charged, commission of the offense. That's certainly something that should be considered in whether the defendant accepted responsibility or not. Did you feel remorseful, immediately go and confess? That's a big plus factor. I want the court to be able to consider that. If the defendant doesn't. If it is not a bright line rule across the board, in this situation where clearly the court denied acceptance of responsibility because of conduct during the arrest. I mean, that's it. So it's not bright line, but it's this case. This case, I would say, the court considers something it was allowed to consider. Post-offense words of conduct. He never considered the fact that he had his minister there and he'd been remorseful. There's all evidence of his acceptance of responsibility, but the court didn't consider it. So even if we don't adopt a rule, it has to go back for him to weigh these factors. Your Honor, you mentioned before that you have three state or trial court judges here. I think we need to be a little bit fairer to Judge Semper here. This is an odd case. There was no PSR. There was sentencing where none of this was disputed. There was no briefing on this issue. Judge Semper, when he denied that acceptance of responsibility reduction, hadn't even heard the defendant yet. By the way, the defendant's allocation was not particularly remorseful. At the end of the hearing, when it's brought up again, Judge Semper first says, you know what, I'll give you the acceptance of responsibility, but nothing's going to change. You're going to get 12 months. He then thinks about it a little further. I don't know what's going on in his mind, but he says, you know what, I'm not going to give it to you. I don't like the way you behaved when you were arrested. Nothing's going to change. You're still going to get 12 months. This goes to the harmlessness issue, but it also goes to what Judge Semper was considering at the time. Again, let's remember, no PSR. You said you have no idea what's going on in his mind. How are we supposed to decide for what he tethered the sentence to then? Well, Your Honor, I think we could look at. I think he needed to do some math. Let's look at what he said. He said, you deserve a 10, offense level 10. This is what you deserve. He gave a pretty good explanation as to why he was awkwardly varying. Didn't like the conduct. Didn't like that he committed this offense shortly after the state offense. Didn't like that he evaded capture. And he didn't like the state offense. Excuse me? And he did not like the state offense. That really bothered him. Well, the state offense was a serious crime for which the defendant got essentially no time at all. Don't argue that. Don't argue that. I'm not arguing that.  So I think Judge Semper, in giving the variance, gave a pretty good explanation of why he thought a modest 6-month variance was warranted here. And he said, I think you deserve a 10. But if you look at it technically, he's actually departing. He's departing to a higher offense level without any notice being given. I mean, departure has to be, somebody has to move for it. You have to have notice. The judge did not depart. He varied up to a level 10. He went to an offense level 10. Yeah, that's a variance. That's not a variance. A variance is, it's 0 to 6, but I'm giving you 12. That's a variance. There are various ways to vary. Some judges vary simply by picking the number and saying, okay, you're going to get a 12-month sentence. Some vary by degrees of offense levels. That's perfectly legitimate under this court's precedent. So he said, I think you deserve a 10. By the way, he didn't say, I think you deserve a 2-level variance. He said, I think you deserve a 10. He obviously looked at the book, saw what a 10 was, and said, you deserve a 6- to 12-month sentence, and imposed a 12-month sentence. That's a harmless error. Even if you don't agree with me on the acceptance of responsibility issue, that's harmless error under this court's precedent. Zawielski, in a legway, which is a non-presidential opinion, which is very similar. Even before that, let's even take a step back. The defendant wants to say, well, you have to give an alternative sentence in order for it to be a harmless error, right? That's where the guideline range has changed. The defendant doesn't mention it much in his brief, but the guideline range here never changed. When Judge Semper got to step 3, he had the correct guidelines range, 0 to 6 months. That's undisputed. And this court's precedent over and over and over again says that's a harmless error. Judge Restrepo, you wrote an NPO last week, which was basically the same exact issue.  Did he read his NPOs? You're the only one. I have responsibility to keep up to date on some stuff. There, the criminal history score changed, but it didn't change the guideline range. This court said, harmless. We have the Perez-Colón case. We have the Abdullah case. That was a preserved claim where the district court maybe got the role wrong, got the drug quantity wrong. And this court said, doesn't matter. Harmless error because the career offender guideline applied. So the range didn't change. Now, it's hard to find cases that are exactly like this because it's very rare. You have to be very low on the book or very high on the book for the offense level to change and for the range not to change. But the fact remains that when Judge Semper got to step 3, he had the correct guidelines range, 0 to 6 months. So any error is unquestionably harmless for that reason. And I want to point to, Your Honor, I pointed you to the Edmund case you wrote, but I provided to Mr. Shepard two other sites that I'll let your clerks write down. United States v. Faulkner. That's a Sixth Circuit case from 2019. And the citation is 926F3-266. And that's a case where the offense level was 43. The defendant said, well, my criminal history category was calculated wrong. And the court said, doesn't matter. 43 is always life. Harmless. United States v. Mathis. But that is very different than this situation. I don't see why, Your Honor. Because it was always life. Here you have a situation where the government, he goes into court. And I can see why there's no PSR. Why would defense counsel go through the hassle of getting a PSR? By the way, was he in custody? Was the defendant here detained prior to the plea? It was Andrea?  Then we wouldn't get a PSR because that's going to delay things. As long as it takes to get a PSR. From the defendant's perspective, the government's agreed to basically put him on the street. So why would he do anything that could possibly delay the time he hits the street? Why get a PSR? Well, he's not going to hit the street regardless, Your Honor. Because I'm fairly certain he's going to be deported. But that's not really. He delayed the PSR. The parties agreed. We all know that the party's agreement doesn't, you know, bind the district court judge. It also doesn't make the district court judge wrong because we disagreed with them. Can I just take that last slide just so the clerks have it? 767, F3rd, 1264. And that's an 11th Circuit case from 2014. And there, the offense level was 41. The defendant wanted a 39. So that's two levels lower. And the court said that's harmless because the range is still 360 to life. Same exact thing happened here. Range was still 0 to 6. How about the court's failure to address the disparity of sentences, which is one of those factors? And it would be clear error. Well, Your Honor, he didn't object. So it's a plain error claim. Okay. Plain error. Plain error claim. And on a plain error review for a claim like that, he needs to show a reasonable probability the district court would have imposed a different sentence. Yeah. And, well, Your Honor, the judge read the sentencing memo. You referred to the mountain. He read the sentencing memo, which was four pages. So he read the whole thing. That's number one. Number two, he explained why this defendant deserved a 12-month sentence for his individual circumstances. He committed a very serious offense for which he got one criminal history point. I bet that most people in that category that the defendant is citing to, that doesn't apply to them. He evaded capture. He seriously hurt him. But he evaded capture. When he was being arrested. Well, they fell down the stairs after a tussle. Who knows what the whole. Your Honor, a deportation officer was seriously hurt in that situation. That can happen. Of course it can happen, Your Honor. But do you think that the generic statistics that the defendant provided, that Judge Semper would look at that and say, oh, yeah, you're right, these people are similarly situated. I'm not going to give you 12 months. After having just explained for fairly lengthy, a couple of pages, why he thought a 12-month sentence was appropriate here. So my point, Your Honor, is if the defendant had jumped up at the end and said, Your Honor, you forgot my unwarranted disparities argument. There is no possibility, none, that Judge Semper would have said, oh, you're right. I'm going to give you six months now. He just explained why a 12-month sentence was appropriate. This Court has said that that is. Well, but he doesn't consider that people who commit this offense, you know, get either time served or, you know, lying on a form. Your Honor, I think he did consider that. It's a four-page sentencing memo which he explicitly talks about things that were in that sentencing memo. The idea that he would have seen those generic statistics and changed his mind, I think, is unrealistic. What do we make of his sentencing with supervised release conditions that have to do with the state offense? That's troubling. What do we do with that? Well, Your Honor, I would say that that was not a brief, so it's not something I've thought about, to be honest with you. It's a little strange, but again, he didn't jump up and object to that either. So he neither objected to it or raised it on appeal. So I'm kind of in a bad position in talking about that here. Let me – can I get back just to the plenary issue for a second? Yes. The defendant cites cases from the past like Verced. That's a case I argued right here. That was a 128-month downward variance, okay? And that was before this Court required preservation of the issue at the end. So this Court reviewed that for abuse of discretion. So, yes, a 128-month downward variance requires a district court to maybe put a little bit on the record about unwarranted disparities. This was a six-month variance, and the defendant didn't object. So this is a little bit of apples and oranges comparison here. Thank you. We hear you. Thank you very much. Tell us how you really feel. I would ask you to affirm. Thank you very much. I just want to address a couple issues on rebuttal. I'll start with the last issue, the sentencing disparity issue. This Court did not say in Verced that it only needed to address sentencing disparities if there was an extraordinarily large upward variance. It said very clearly that any variance merits considering this. And any time somebody brings up a colorable argument, it needs to be considered. And I will point out, I can appreciate the government's certainty that there would be no difference on remand, but that's not what we've seen borne out in cases like this. Parties routinely argue that the district court will not change its mind based on a sentencing disparity argument. But in Verced itself, on remand, and I acknowledge it was a more significant variance, but on remand, the district court, upon hearing those arguments, did change its sentence. So I do think that there is evidence of prejudice here. I also want to address the acceptance issue, just a couple of points. The government's stated rule is unworkable here. It says post-offense conduct, but it also says that the court should be able to consider any evidence at once. So I'm not sure how the court would not be able to consider the offense conduct itself under those circumstances. So I don't understand that rule. I don't see why the court would diverge from all of the circuits to address this and create a new rule like that. I also just disagree with the government in its pointing to the commentary as evidence that this type of evidence can be considered. It's, I think, striking that the government cannot identify a single case where pre-indictment conduct was considered to deny acceptance. Judge Rendell, I think you correctly pointed out that all of these are examples of affirmative evidence. And the government has not been able to identify any cases where acceptance was denied based on similar circumstances. As to the harmless error arguments that the government made, I do just one minor thing. Abdullah did not say harmless error. He said that the issue was mooted. I don't know that that makes a big difference, but I just want clarity on the record. And I will again say that the government's pointing to this Zabielski case and then unprecedented opinions should not outweigh what this court has said time and time again, which is that this is a heavy burden for the government to show harmless error. And I do not believe they've met that burden here. If there are no other questions, for all these reasons, we would ask the court to vacate and remand for re-sentencing. Thank you, counsel. Thank you. Case is very well argued. Very well argued. Thanks for your briefs and your arguments. Enjoy the rest of the day. Thank you.